PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6475
    FAX: (415) 436-7234
    wendy.garbers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br>    Plaintiff, </br></br>  v. </br></br> ZACHARY TAYLOR-SMITH, </br></br>    Defendant. | No. 25-cr-00011 PHK </br></br> **UNITED STATES'S SENTENCING MEMORANDUM** </br></br> Date: May 8, 2025 </br> Time: 1:30 p.m. |

## I. BACKGROUND

At first blush, this case concerns a simple (and not terribly injurious) assault that occurred on June 14, 2022, at Baker Beach. Upon further investigation, the assault turned out to be the culmination of a months-long project in which defendant Zachary Taylor-Smith toyed with and humiliated his victim. Defendant Taylor-Smith and Victim One had attended Saint Ignatius High School together and were recent graduates. At the time of the assault, Victim One believed Taylor-Smith to be his friend. In reality, Taylor-Smith had been assuming false female identities that he used to correspond with the Victim One. Through these identities, Taylor-Smith persuaded Victim One to send Taylor-Smith money and to send pornographic pictures and videos of himself, which Taylor-Smith then showed others. Taylor-Smith used one of the false female identities, "Jolie", to lure Victim One to Baker Beach on June

14, 2022, where he then assaulted him.

### A. The June 14, 2022 Assault.

On June 13, 2022, Victim One planned to drive Taylor-Smith and another friend to the University of California at Davis, to attend a party. In Novato, California, Victim One got a speeding ticket and decided to return home to San Francisco due to multiple requests from his mother. Around midnight on June 14, 2022, Victim One dropped off Taylor-Smith and the other young man at the young man's home in Kentfield, California.

While Victim One was enroute to San Francisco, where he lives, he received a text message from "Jolie," who he believed to be a young woman. Victim One was initially given "Jolie's" number by Taylor-Smith via Snapchat. Victim One had never spoken to or met "Jolie" in person; the two had only exchanged text messages. In reality, "Jolie" was Taylor-Smith. The text message from "Jolie" to Victim One stated that she felt scared and lonely, and "Jolie" asked Victim One to spend the night with her at her father's home located at 127 Seacliff Avenue in San Francisco. (There is no 127 Seacliff Avenue.) Victim One agreed and drove directly to 127 Seacliff to check on "Jolie."

When Victim One arrived in the area of 127 Seacliff, he called "Jolie," who did not answer the phone call, but responded via text message that she needed ten minutes as she was on the phone with a friend. This happened a couple more times as Victim One followed up with "Jolie" on her status. Around 1:00 a.m., "Jolie" texted Victim One to meet her at Baker Beach, where she had decided to walk her dog. Victim One parked his car and walked to Baker Beach.

At Baker Beach, Victim One texted "Jolie" to try to locate her and used his cell phone's flashlight to look around, as it was very dark. "Jolie" texted Victim One that she could see his cell phone's flashing light. At this time, Victim One noticed a dark figure, later identified as Taylor-Smith, who stumbled sloppily towards him. Taylor Smith was pretending to be a drunk or homeless person. Victim One yelled "who are you?" and "what do you want?," but Taylor-Smith did not respond. Taylor-Smith juked with Victim One as he tried to move out of Taylor-Smith's reach. Victim One then increased the brightness on his cell phone's flashlight and pointed towards Taylor-Smith, but was unable to identify any features, as Taylor-Smith was disguised in all black and had on a black balaclava.

Taylor-Smith punched Victim One in the face area.  Victim One screamed "help!"  Taylor-Smith then placed Victim One in a chokehold, which caused Victim One to struggle to scream for help.  Taylor-Smith knocked Victim One's cell phone out of his hand and took Victim One down onto the sand.  When Victim One was finally able to get out from underneath Taylor-Smith, he fled back to his vehicle.

### B.     The Catfishing that Occurred Before June 14, 2022.

In the course of investigating the assault, it was revealed that around August 2021, Taylor-Smith introduced Victim One to another "female" named "Amanda," who was purportedly a twenty-one-year-old junior at Berkeley.  Victim One recalled that it was Taylor-Smith who showed him "Amanda's" Instagram account and stated that Amanda just wanted to "hookup."  Similar to "Jolie," Victim One only exchanged text messages with "Amanda" and Snapchats, but never spoke to or met her.  The difference is that Victim One communicated with "Amanda" from approximately August 2021 until April 2022.

"Amanda" told Victim One that she had a side business on OnlyFans.com, which is a website known for sex workers to create pornographic content for subscribers for a fee.  "Amanda" then requested "dick pics" of Victim One, purportedly to determine whether she would want to make a pornographic video with him.  Victim One recalled that she was insistent in her requests, and he complied. Next, "Amanda" directed Victim One to send her videos of him masturbating.  Victim One complied, but "Amanda" requested multiple retakes due to angles, positions, etc.  Victim One complied.  Unbeknownst to Victim One, he was actually sending these intimate images to Taylor-Smith.

"Amanda" asked Victim One to send her money as a deposit to join her on OnlyFans and make a pornographic video.  Victim One agreed, and "Amanda" directed him to send money via CashApp.  Altogether, Victim One made the following transfers to "Amanda" via CashApp, which actually went to Taylor-Smith:

- $250 on February 15, 2022;
- $250 on February 23, 2022; and
- $200 on April 2, 2022.

Victim One followed up with "Amanda" on next steps, but "Amanda" was unable to provide any. Victim One then asked for the return of his money. It was never returned.

### C. Criminal Charges.

Prior to the initiation of the above-captioned action, the parties discussed a pre-filing resolution. Taylor-Smith took responsibility for his crime from the parties' initial discussions. The parties ultimately agreed on a proposed resolution, and the government filed an Information charging Taylor-Smith with misdemeanor assault on January 16, 2025. (ECF 1.) Taylor-Smith accepted responsibility for his crime and entered a guilty plea on January 22, 2025. (ECF 3, 5.)

## II. SENTENCING GUIDELINES CALCULATIONS

Probation calculates Taylor-Smith's Sentencing Guidelines as follows:

    a. **Base Offense Level, U.S.S.G. § 2A2.3(a)(1):**     **7**

    b. **Specific offense characteristics:**     **+0**

    c. **Acceptance of Responsibility § 3E1.1:**     **-2**

    d. **Adjusted Offense Level:**     **5**

*See* PSR ¶¶ 18-26. The government agrees with this calculation. The parties have not reached any agreement regarding Taylor-Smith's criminal history. However, Probation notes, and the government agrees, that Taylor-Smith has no criminal history, putting him in Criminal History Category I. (*Id.* at ¶¶ 30-31.) As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 5 and Criminal History Category I is 0-6 months. (*Id.* at ¶ 67.)

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553(a) sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to

avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims.  18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.  The Guidelines are "the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives."  *Rita v. United States*, 551 U.S. 338, 350 (2007).

This is a regrettable case, involving two young men, who both have promising futures before them.  Taylor-Smith's actions towards Victim One were twisted and inexcusable.  Taylor-Smith caused significant trauma for Victim One and the interaction seemed designed to humiliate him.  Victim One has understandably had a difficult time moving on from this incident.  He has had to seek both medical and mental health care and still has anxiety as a result of what happened.

What motivated Taylor-Smith to do what he did to Victim One remains unclear.  Taylor-Smith seems to sincerely believe that Victim One was his friend, yet his actions towards Victim One were sinister and inconsistent with friendship.  At its core, Taylor-Smith seems to have been motivated by a desire to humiliate Victim One.

That said, Taylor-Smith admitted his wrong-doing and took responsibility for his crimes.  Taylor-Smith expresses what appears to be sincere remorse and has sought therapy.  The government acknowledges that Taylor-Smith's father's incarceration while he was growing up likely had a significant, negative impact on Taylor-Smith, notwithstanding all the support he has received from his mother.

Because of the serious nature of Taylor-Smith's crime, the government viewed a criminal conviction as essential.  But, incarceration would serve little further purpose, especially given Taylor-Smith's early acceptance of responsibility, desire to make amends, and efforts to address his mental health.  For these reasons, the government submits that one year of Probation is the appropriate sentence.  It appropriately balances the seriousness of the crime, the trauma the victim has endured, and the mitigating circumstances present.

**IV.   RESTITUTION**

The Court should also order Taylor-Smith to pay $2,799.99 in restitution to Victim One, as he

agreed to do in his plea agreement.  (ECF 3 at ¶ 9.)  This amount is comprised of:

- $700 that Victim One sent Taylor-Smith through CashApp;
- $799.99 for Victim One's lost iPhone; and
- $1300 for Victim One's therapy costs.

## V. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Taylor-Smith to one year of Probation, 80 hours of community service, a $25 special assessment, and order Taylor-Smith to pay restitution to his victim in the amount of $2,799.99, destroy all images and videos of the victim in his possession, and continue his mental health treatment while on Probation.

DATED:  May 1, 2025

Respectfully submitted,
PATRICK D. ROBBINS
Acting United States Attorney

*/s/ Wendy M. Garbers*
WENDY M. GARBERS
Assistant United States Attorney